## GEORGE McCALL'S LESSEE v. SARAH LOCKERMAN and JOSEPH.

Court of Common Pleas. Kent. December 4, 1801.

*Rodney's Notes.*

*Ridgely* [for plaintiff]. *Rodney, Read, Vandyke* [for defendant].

*Ridgely,* for plaintiff, opened the cause on the part of plaintiff. The question for jury is location.

*G. Read* for defendant. Our title has received heretofore the sanction of a jury.

William Killen, Esquire, sworn. About 1753 or 1754 Hugh Park called me to execute a warrant in the fork of St. Jones. I

informed him there was no vacancy there. I was carried I think on the lands on the southeast side of Maskel's Choice, do not know whether Pelopons or Maskel's Choice joined or not, but was in the neighborhood. Housman's lands was the same of Pelopons. Do not know if vacant lands or not adjoining Housman etc. Park's warrant a located one. In surveying, it was my practice and that of others to take notice of boundaries, and if vacancy to note it. I was appointed surveyor in September 1749 and surveyed Pelopons same Fall.

Peter Miller sworn. 71 years of age. In 1743 Maskel Clark lived on the land, his dwelling on a hill near a marsh, showed where the house and barn was marked on plot by Cummings (forty or fifty acres) on the land claimed by plaintiffs. Road run between old and young Clark's land. H. Durbow had a house on the land. Stanton and Jones land joined. Stanton's was some distance from Pelopons.

Daniel Wright Newman. 63 years of age. Owned a part of Maskel's Choice, etc.

Maskel Clark. 43 or 44. I live on Pelopons. McCall's claim takes best part of Maskel's Choice, takes in the barn.

*Ridgely* for plaintiff. The only question: whether this land was vacant before our survey was made, and limitation. They claim under Maskel's Choice, [where] according to their own survey, second course is N 418, agreeing to our location, and the survey of Pelopons by Mr. Killen, containing many courses, does not come down to it.

*Vandyke.* Warrant to Park, 1750. Surveyed October, 1776. I contend after Declaration of Independence no survey could be made under the Penn's, and was illegal. A period of twenty-six years had elapsed, when twenty years adverse possession would bar him. November 14, 1739, title of defendants under Maskel Clark's warrant commences. The location of defendants of this warrant same as plaintiff, but defendant says from the expression "to include his dwelling" is paramount to course and distance, also that it was bounded on the northwest by a tract originally called Flour Field, and now Pelopons. Rule in location: first, natural boundaries; second, course and distance; but as on the face of the warrant we are to go to Flour Field, course and distance must give way. Action brought to May, 1797. We also recovered in May, 1796; in 1784, assigned from Doctor Park to M. McCall. Bull.N.P. 232, verdict on same point and between same parties to have a persuasive effect.

*Rodney* for defendant. Hugh Park, his son, not Mark McCall, had possession. George McCall, administrator of his brother,

obtained an order of the Orphans' Court and purchased. Miller says road ran near the line between Maskel Clark and Flour Field. Plaintiff's title accrued in 1750, because a located warrant; therefore barred by limitation. 4 Term 310, when the Act begins to run no circumstances will stop it. 2 Co.Inst. 115, the law favors possession.

*Ridgely.* If the land is vacant, limitation "will not run against the State"—opinion of the Court of Common Pleas on the former trial.

*G. Read* for defendants. Our warrant and survey considered in the nature of a grant to convey the title. Cowp. 215, Lord Mansfield, limitation, from the length of time, a positive bar. Warrant was the inception of their title. Act of Assembly, [2 Del.Laws 1175,] protects those who made surveys after Declaration [of] Independence. Act provides for the obtaining patents on warrants granted before 1760. But I contend [it] does not apply to this case, because the warrant and survey of plaintiff was not accompanied by possession.

CHIEF JUSTICE BOOTH. Opinion in former trial, "Statute cannot run if the land be vacant" etc.

*Ridgely,* for plaintiff, in conclusion. Limitation could not run until plaintiff's title was so complete as to enable him to recover in ejectment, which was not until survey. [2] Del.Laws 1175, making surveys previous to 1760 good etc. Flour Field, by their own papers, has the N. S. lines six hundred perches and straight.

CHIEF JUSTICE BOOTH. In ejectment plaintiff must show you a title. Defendant's objection first, that Park's warrant was a located [one] and plaintiff is barred; but the Court are of a different opinion. If the land was vacant, the Statute will not run. As to location, you will decide from the evidence before you.

The jury retired and in about three-quarters of an hour brought in a verdict for the plaintiff.